Jonathan Toren
Jeffrey M. Monhait (*to be admitted pro hac vice*)
Haryle Kaldis (*to be admitted pro hac vice*)
COZEN O'CONNOR
999 Third Avenue, Suite 1900
Seattle, Washington 98104
Telephone: (206) 340-1000
E-mail:  jtoren@cozen.com
         jmonhait@cozen.com
         hkaldis@cozen.com

Attorneys for Defendant
AFTERNIC SERVICES, LLC

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PREMIER SHIELD INSURANCE, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> AFTERNIC SERVICES, LLC, <br><br> Defendant. | Case No.:  4:22-CV-40068-RGS |

## DEFENDANT AFTERNIC SERVICES, LLC'S
## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     Introduction..................................................................................................1

II.    Factual And Procedural Background ...........................................................2

    A.    Background On Afternic .....................................................................2

    B.    Allegations In The FAC .....................................................................2

III.    Legal Standard ............................................................................................3

IV.    The FAC Fails To State Any Claims To Relief .............................................3

    A.    Plaintiff Fails To State A CFAA Claim .............................................3

        1.    There Are No Allegations That GoDaddy Accessed Plaintiff's Account "Without Authorization" As Required By § 1030(a)(5)(A) or (B).............4

        2.    Alleged Misuse of Access Does Not Constitute "Exceeding Authorized Access" Under § 1030(a)(2)(C) ................................................................6

        3.    The FAC Does Not Plead A Cognizable Loss ............................................9

    B.    Plaintiff Fails To State An ACPA Claim ..........................................10

        1.    Marketplaces Like Afternic Do Not "Traffic In" Domain Names ...........11

        2.    Plaintiff Does Not Allege A Bad Faith Intent To Profit From A Mark.....12

        3.    There Is No Cause Of Action For Contributory Cybersquatting...............13

    C.    Plaintiff Cannot State A Chapter 93A Claim....................................14

        1.    There Are No Allegations Of "Extreme Or Egregious" Conduct.............14

        2.    There Are No Allegations That Afternic's Post-Sale Statements Harmed Plaintiff ...................................................................................................16

        3.    Plaintiff's Alleged Damages Are Intangible And Non-Cognizable .........17

    D.    Plaintiff Fails To State A Conversion Claim ....................................18

        1.    Domain Names Are Intangible Property....................................................18

        2.    The FAC Does Not Allege Afternic's "Dominion Or Control" ...............19

V.    Conclusion .................................................................................................20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acad. of Motion Picture Arts & Scis. v. GoDaddy.com, Inc.*,
No. CV 10-03738 AB (CWX), 2015 WL 5311085 (C.D. Cal. Sept. 10, 2015) .....................13

*ACI Payments, Inc. v. Conservice, LLC*,
No. 121CV00084RJSCMR, 2022 WL 622214 (D. Utah Mar. 3, 2022)..................................9

*Anoush Cab, Inc. v. Uber Techs., Inc.*,
8 F.4th 1 (1st Cir. 2021)...............................................................................................14, 15, 16

*Armor Corr. Health Servs., Inc. v. Teal*,
No. 19-CV-24656, 2021 WL 5834245 (S.D. Fla. Dec. 8, 2021)...............................................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................................3

*Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.*,
17 N.E.3d 1066 (Mass. 2014) ...............................................................................................14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................................3

*Biesenbach v. Does 1-3*,
No. 21-CV-08091-DMR, 2022 WL 204358 (N.D. Cal. Jan. 24, 2022) ..................................9

*Bird v. Parsons*,
127 F. Supp. 2d 885 (S.D. Ohio 2000), *aff'd*, 289 F.3d 865 (6th Cir. 2002)...........2, 11, 12, 20

*Bird v. Parsons*,
289 F.3d 865 (6th Cir. 2002) ...................................................................................11, 12, 14

*Blake v. Professional Coin Grading Serv.*,
898 F. Supp. 2d 365 (D. Mass. 2012) ....................................................................................18

*Bush v. WellPet, LLC*,
534 F. Supp. 3d 179 (D. Mass. 2021) ..............................................................................15, 16

*Carfax, Inc. v. Accu-Trade, LLC*,
No. 121CV00361RDATCB, 2022 WL 657976 (E.D. Va. Mar. 4, 2022) .................................5

*Castellano Cosmetic Surgery Ctr., P.A. v. Rashae Doyle, P.A.*,
No. 8:21-CV-1088-KKM-CPT, 2021 WL 3188432 (M.D. Fla. July 28, 2021)......................6

*DatabaseUSA.com, LLC v. Van Gilder*,
    No. 8:17-CV-386, 2022 WL 2251665 (D. Neb. May 24, 2022)................................................5

*Discover Realty Corp. v. David*,
    2003 WL 22387138, 2003 Mass. App. Div. 172 (Dist. Ct. 2003)..........................................19

*E. Bldg. Servs. Corp. v. Matzell, Richard & Watts, Inc.*,
    No. SUCV200302601C, 2008 WL 1868378 (Mass. Super. Jan. 23, 2008) .....................15, 17

*Evergreen Marine Corp. v. Six Consignments of Frozen Scallops*,
    4 F.3d 90 (1st Cir. 1993)...........................................................................................................18

*Fafard Real Est. & Dev. Corp. v. Metro-Bos. Broad., Inc.*,
    345 F. Supp. 2d 147 (D. Mass. 2004) ....................................................................................17

*Foley Indus., Inc. v. Nelson*,
    No. 4:21-00309-CV-RK, 2021 WL 5614775 (W.D. Mo. Nov. 30, 2021) ...............................8

*Ford Motor Co. v. Greatdomains.Com, Inc.*,
    177 F. Supp. 2d 635 (E.D. Mich. 2001).......................................................................*passim*

*Fraser v. Mint Mobile, LLC*,
    No. C 22-00138 WHA, 2022 WL 1240864 (N.D. Cal. Apr. 27, 2022).................................10

*Fred Hall Shows, Inc. v. Hall*,
    No. SACV 21-417JVS(KESX), 2021 WL 3930609 (C.D. Cal. Aug. 25, 2021) ......................5

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    31 F.4th 1180 (9th Cir. 2022) ...................................................................................................4

*HP Tuners, LLC v. Cannata*,
    No. 318CV00527LRHWGC, 2022 WL 562625 (D. Nev. Feb. 24, 2022) ...............................8

*Indiaweekly.com, LLC v. Nehaflix.com, Inc.*,
    No. 07-CV-0194 (TLM), 2011 WL 13228167 (D. Conn. Jan. 19, 2011)...............................11

*Koch Acton, Inc. v. Koller*,
    No. CV 21-10374-FDS, 2022 WL 847408 (D. Mass. Mar. 22, 2022) ............................18, 19

*KPM Analytics N. Am. Corp. v. Blue Sun Sci., LLC*,
    No. 4:21-CV-10572-TSH, 2021 WL 6275214 (D. Mass. Aug. 23, 2021) ..............................18

*Lightfoot v. Koonz, McKenney, Johnson & DePaolis LLP*,
    No. CV 22-238 (JEB), 2022 WL 2176923 (D.D.C. June 16, 2022).........................................6

*Lockheed Martin Corp. v. Network Sols., Inc.*,
    985 F. Supp. 949 (C.D. Cal. 1997), *aff'd*, 194 F.3d 980 (9th Cir. 1999)................................13

*Madan v. Royal Indem. Co.*,
    26 Mass. App. Ct. 756, 532 N.E.2d 1214 (1989) ...................................................15

*Milford Power Ltd. P'ship by Milford Power Assocs. Inc. v. New England Power Co.*,
    918 F. Supp. 471 (D. Mass. 1996) ...........................................................................17

*Miller v. Hurst*,
    No. 3:17-CV-00791, 2020 WL 5757907 (M.D. Tenn. Sept. 28, 2020)..................12

*Monsarrat v. Newman*,
    514 F. Supp. 3d 386 (D. Mass. 2021) .......................................................................3

*Network Sys. Architects Corp. v. Dimitruk*,
    No. CIV.A. 06-4717-BLS2, 2007 WL 4442349 (Mass. Super. Dec. 6, 2007)........18

*Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc.*,
    754 F.2d 10 (1st Cir. 1985)......................................................................................15

*Petroliam Nasional Berhad v. GoDaddy.com, Inc.*,
    897 F. Supp. 2d 856 (N.D. Cal. 2012), *aff'd* 737 F.3d 546 (9th Cir. 2013) ...............11, 13, 14

*Rekor Sys., Inc. v. Loughlin*,
    No. 19-CV-7767 (LJL), 2022 WL 789157 (S.D.N.Y. Mar. 14, 2022).......................4

*RFF Family P'ship, LP v. Link Dev., LLC*,
    932 F. Supp. 2d 213 (D. Mass. 2013) .....................................................................16

*Saffron Rewards, Inc. v. Rossie*,
    No. 22-CV-02695-DMR, 2022 WL 2918907 (N.D. Cal. July 25, 2022) ...............10

*Sentient Jet, LLC v. Apollo Jets, LLC*,
    No. 13-CV-10081, 2014 WL 1004112 (D. Mass. Mar. 17, 2014).........................19

*Sourcing Unlimited, Inc. v. Elektroteks, LLC*,
    No. 20-CV-11955-ADB, 2021 WL 2875713 (D. Mass. July 8, 2021)...................18

*Struzziero v. Lifetouch Nat'l Sch. Studios, Inc.*,
    677 F. Supp. 2d 350 (D. Mass. 2009) .....................................................................19

*Trent Partners & Assocs., Inc. v. Digital Equip. Corp.*,
    120 F. Supp. 2d 84 (D. Mass. 1999) .......................................................................15

*Van Buren v. United States*,
    141 S. Ct. 1648 (2021).................................................................................. *passim*

**Statutes**

15 U.S.C. § 1127.......................................................................................................19

Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) ...................................11, 14

Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ........................................................... *passim*

**Other Authorities**

Mass. Gen. Laws Chapter 93A ..............................................................................................14

Defendant Afternic Services, LLC ("Afternic") respectfully moves to dismiss Plaintiff Premier Shield Insurance, LLC's ("Plaintiff") First Amended Complaint (Dkt. No. 8) ("FAC") under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## I.    INTRODUCTION

In March and April of 2021, Plaintiff listed multiple domain names for sale with Afternic, which provides an online marketplace for buying and selling domains.  As part of their listing agreement, Plaintiff granted Afternic access to the online account containing those domains and other domains registered by Plaintiff.  Plaintiff claims that it did not list for sale the domain premiershieldinsurance.com (the "Domain Name").  After Plaintiff received notice that the Domain Name had been sold, Plaintiff filed suit.

Plaintiff admits that its listing agreement allowed Afternic to access Plaintiff's account for the purpose of listing and selling domain names, but the parties disagree about whether the specific Domain Name at issue was part of that agreement.  Trying to circumvent the parties' contract, Plaintiff brings claims for alleged violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"), the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) ("ACPA"), Mass. Gen. Laws Chapter 93A ("Chapter 93A"), and for conversion.  None of those claims address the situation described in the FAC—i.e., a dispute about the scope of Plaintiff's agreement with Afternic—and each claim contains multiple flaws requiring dismissal.

First, Plaintiff cannot state a CFAA claim because there are no allegations that Afternic accessed Plaintiff's account without authorization or in excess of its authorization.  To the contrary, Plaintiff alleges that Afternic had authorization to access Plaintiff's account, but that Afternic misused that access when it listed the Domain Name.  Under *Van Buren v. United States*, 141 S. Ct. 1648 (2021), such allegations do not state a CFAA claim.  Second, Plaintiff cannot state an ACPA claim because marketplaces like Afternic do not "use" or "traffic in" domain names as

those terms are statutorily defined, there are no allegations of bad faith intent to profit from Plaintiff's mark, and there is no cause of action for contributory cybersquatting. Third, Plaintiff cannot state a Chapter 93A claim because the conduct alleged is not "extreme or egregious" and there is no causal nexus between Afternic's post-sale statements and the harm alleged. Fourth, Plaintiff cannot state a claim for conversion because the Domain Name is intangible property, there are no allegations that it merged into a tangible object capable of conversion, and there are no allegations that Afternic exercised the requisite dominion or control required for such a claim.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Background On Afternic

As alleged in the FAC, Afternic runs a domain name marketplace through its website, www.afternic.com. Potential buyers can bid on domains in public auctions or purchase domain names instantly for a listed "buy it now" price. For sellers, Afternic functions like a real estate listing service, giving sellers options to list their domains for sale. *See generally Bird v. Parsons*, 127 F. Supp. 2d 885, 889 (S.D. Ohio 2000), *aff'd*, 289 F.3d 865 (6th Cir. 2002); *Ford Motor Co. v. Greatdomains.Com, Inc.*, 177 F. Supp. 2d 635, 645 (E.D. Mich. 2001).

### B.    Allegations In The FAC

Plaintiff registered the domain name premiershieldinsurance.com (the "Domain Name") with GoDaddy.com, LLC ("GoDaddy") in 2016. *See* FAC ¶ 15. Plaintiff registered several other domain names with GoDaddy, and on March 14, 2021, "listed one of its domain names for sale through its GoDaddy account," after which Plaintiff received a notification from Afternic about the listing. *Id.* ¶ 18-19. Plaintiff listed additional domain names for sale on March 24, 2021 and April 1, 2021. *Id.* ¶ 21-22. Plaintiff continued to receive correspondence regarding its listings. *Id.* ¶ 23-25. Plaintiff alleges that it did not list the Domain Name for sale or receive communications that the Domain Name had been listed. *Id.* ¶ 26. On September 24, 2021, Plaintiff

2

received a communication from Afternic that the Domain Name had been sold via Afternic's Fast Transfer network. *Id.* ¶ 27. Plaintiff alleges that it never listed the Domain Name for sale and never accepted the terms and conditions for the Fast Transfer program. *Id.* ¶ 28-30, 32. Plaintiff therefore alleges that Afternic "upon information and belief, accessed without any authorization whatsoever [Plaintiff's] GoDaddy account…took possession of [the Domain Name]… and sold and transferred the domain name to an Indonesian gambling entity." *Id.* ¶ 36.

Plaintiff brings claims against Afternic for violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"), Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) ("ACPA"), Mass. Gen. Laws Chapter 93A ("Chapter 93A"), and for conversion.

## III.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must accept as true all of the complaint's factual allegations, but not any legal conclusions, and a "claim is facially plausible if its factual content 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Monsarrat v. Newman*, 514 F. Supp. 3d 386, 390 (D. Mass. 2021) (quoting *Ashcroft*, 556 U.S. at 678).

## IV.    THE FAC FAILS TO STATE ANY CLAIMS TO RELIEF

The FAC fails to state a claim under the CFAA, ACPA, Chapter 93A, or for conversion.

### A.    Plaintiff Fails To State A CFAA Claim

Plaintiff cannot state a CFAA claim against Afternic because *Van Buren v. United States*, 141 S. Ct. 1648 (2021) expressly overruled the theory of liability alleged in the FAC. The CFAA creates civil liability for unauthorized access or damage to a protected computer if the conduct involves, *inter alia*, a loss of at least $5,000 in a one-year period. *See* 18 U.S.C. § 1030(g); *see*

3

*also* 18 U.S.C. § 1030(c)(4)(A).  A CFAA claim requires (1) accessing a protected computer, (2) without any authorization or exceeding authorized access, and thereby (3) causing loss in excess of $5,000.  *See Rekor Sys., Inc. v. Loughlin*, No. 19-CV-7767 (LJL), 2022 WL 789157, at *11 (S.D.N.Y. Mar. 14, 2022).  Plaintiff appears to assert that Afternic violated § 1030(a)(2)(C), (a)(5)(A), and (a)(5)(B) when it "hacked into or otherwise accessed and altered [Plaintiff's] GoDaddy account in order to list and sell [the Domain Name]."  FAC ¶ 65; *see id.* ¶¶ 61-63 (using language substantially similar to 18 U.S.C. § 1030(a)(2)(C), (a)(5)(A)-(B)).  Plaintiff cannot state a claim under these provisions because Plaintiff authorized Afternic's access to its account containing the Domain Name, and misuse of authorized access does not state a CFAA claim.

    1.    <u>There Are No Allegations That GoDaddy Accessed Plaintiff's Account</u>
                     <u>"Without Authorization" As Required By § 1030(a)(5)(A) or (B)</u>

Plaintiff cannot state a claim under § 1030(a)(5)(A) or (B) because there are no well-pled allegations that Afternic acted "without authorization."  18 U.S.C. § 1030(a)(5)(A), (B).[1]  The CFAA's "prohibition on accessing a computer 'without authorization' is violated when a person circumvents a computer's generally applicable rules regarding access permissions, such as username and password requirements, to gain access to a computer."  *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1201 (9th Cir. 2022).  The prohibition on access "without authorization" is addressed to "targeting so-called outside hackers," i.e. those who access "a computer without any

---

[1] Although Plaintiff does not cite to these subsections of the CFAA, the FAC parrots the relevant language.  *Compare* FAC ¶ 62 (alleging that Afternic "knowingly caused the transmission of a program, information, code, or command, and as a result of such conduct intentionally caused damage without authorization, to a protected computer.") *with* 18 U.S.C. § 1030(a)(5)(A) ("knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer") *and* FAC ¶ 63 (alleging that Afternic "intentionally accessed a protected computer without authorization, and as a result of such conduct, recklessly caused damage.") *with* 18 U.S.C. § 1030(a)(5)(B) ("intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage").

permission at all." *Van Buren*, 141 S. Ct. at 1658.  Under this "gates-up-or-down inquiry…one either can or cannot access a computer system, and one either can or cannot access certain areas within the system."  *Id.* at 1658-59.  That creates a "bright-line standard for liability." *DatabaseUSA.com, LLC v. Van Gilder*, No. 8:17-CV-386, 2022 WL 2251665, at *12 (D. Neb. May 24, 2022).

Here, there are no allegations that the gates were closed to Plaintiff's account vis a vis Afternic.  *See Van Buren*, 141 S. Ct. at 1658-59.  To the contrary, Plaintiff granted Afternic access to its account in connection with listing other domain names for sale.  *See* FAC ¶ 21-25.  Because Afternic had authorized access to the account where the Domain Name was kept (along with the other domain names), the "bright-line standard for liability" precludes a CFAA claim. *DatabaseUSA.com, LLC*, No. 8:17-CV-386, 2022 WL 2251665, at *12.  Plaintiff's allegation that Afternic lacked authorization, *see* FAC ¶ 58, is a legal conclusion that this Court need not credit, and is belied by Plaintiff's other allegations that it granted Afternic access through its GoDaddy account to list domain names for sale, and continued to list domains for sale even after being informed that such sales required Afternic's access to its GoDaddy account.  *Id.* ¶ 19-24.

Since *Van Buren*, courts have continued to interpret "without authorization" in the CFAA "narrowly to mean that a party has accessed information that, although previously made available to that party, has since been rescinded by the information provider," or that such permission was never granted.  *Carfax, Inc. v. Accu-Trade, LLC*, No. 121CV00361RDATCB, 2022 WL 657976, at *14 (E.D. Va. Mar. 4, 2022) (dismissing CFAA claims where plaintiff did not undertake an affirmative act to restrict defendant's access); *see also Fred Hall Shows, Inc. v. Hall*, No. SACV 21-417JVS(KESX), 2021 WL 3930609, at *5 (C.D. Cal. Aug. 25, 2021) (denying preliminary injunction based on CFAA claim where plaintiff failed to show how employees were "without

authorization" to access company computers and email prior to the end of their employment). There are no allegations that Plaintiff revoked Afternic's access to its account before the Domain Name was sold, and as such Afternic's access was not "without authorization." *See, e.g.*, *Lightfoot v. Koonz, McKenney, Johnson & DePaolis LLP*, No. CV 22-238 (JEB), 2022 WL 2176923, at *3 (D.D.C. June 16, 2022).

Because there are no allegations that Afternic accessed Plaintiff's account "without authorization," Plaintiff cannot state a CFAA claim under § 1030(a)(5)(A) or (B). Plaintiff cannot state a claim based on allegations that Afternic exceeded its authorized access, either.

### 2. Alleged Misuse of Access Does Not Constitute "Exceeding Authorized Access" Under § 1030(a)(2)(C)

The Supreme Court has held that misusing authorized access does not constitute exceeding authorized access as that term is used in § 1030(a)(2).[2] *See Van Buren*, 141 S. Ct. at 1662. In so holding, the Supreme Court rejected the broader view previously held by the First Circuit (and other circuits) that "exceeds authorized access" included misuse of access. *Id.* at 1653 & n.2. Rather, the "exceeds authorized access" clause targets "so-called inside hackers—those who access a computer with permission, but then exceed the parameters of authorized access by entering an area of the computer to which that authorization does not extend." *Id.* at 1658.

To state a claim under § 1030(a)(2)(C), the plaintiff must plead that the defendant (1) intentionally accessed a computer, (2) without authorization or exceeding authorized access, (3) thereby obtaining information, and (4) causing a loss of at least $5,000. *See Castellano*

---

[2] Although Plaintiff does not cite to § 1030(a)(2)(C), the FAC mirrors the relevant language. *Compare* FAC ¶ 61 (alleging that Afternic "intentionally accessed a computer without authorization and thereby obtained information from a protected computer that involved interstate or foreign communications) *with* 18 U.S.C. § 1030(a)(2)(C) ("intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains…information from any protected computer").

*Cosmetic Surgery Ctr., P.A. v. Rashae Doyle, P.A.*, No. 8:21-CV-1088-KKM-CPT, 2021 WL 3188432, at *9 (M.D. Fla. July 28, 2021).  The CFAA defines "exceeds authorized access" to mean "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter."  18 U.S.C. § 1030(e)(6).  Under the CFAA, an individual "exceeds authorized access" when he "accesses a computer with authorization but then obtains information located in particular areas of the computer—such as files, folders, or databases—that are off limits to him," which does not include the circumstance of someone misusing access that is otherwise authorized.  *Van Buren*, 141 S. Ct. at 1662.

In *Van Buren*, a police sergeant used his authorized access to a state law enforcement computer database to search for a license plate in exchange for a bribe.  *See Van Buren*, 141 S. Ct. at 1653.  Even though that search violated department policy restricting database use to law enforcement purposes only, the Supreme Court held that the CFAA's prohibition against "exceed[ing] authorized access" did not cover those who "have improper motives for obtaining information that is otherwise available to them."  *Id.* at 1652.  Because the sergeant's search for the license plate was not in an area of the database that was "off limits" to him, he did not "excee[d] authorized access" to the database.  *Id.* at 1662.

Plaintiff's allegations map precisely onto the facts of *Van Buren*.  Plaintiff does not allege that Afternic lacked authorized access to Plaintiff's account, but rather that Afternic used the access Plaintiff provided in connection with listing other domains for sale to list the Domain Name, which Plaintiff allegedly had not agreed to sell.  *See* FAC ¶ 34, 36-37.  Specifically, Plaintiff alleges that "When Afternic hacked into or otherwise accessed and altered [Plaintiff's] GoDaddy account in order to list and sell [the Domain Name] through its Fast Transfer program, Afternic accessed a computer as defined in CFAA."  FAC ¶ 65.  Just like the sergeant had authorization to

use the license plate database, and therefore did not exceed his authorized access when he (for an improper purpose) searched for a plate, so too did Afternic have permission to access Plaintiff's account, and therefore did not exceed its authorized access when it listed the Domain Name for sale. *See also Armor Corr. Health Servs., Inc. v. Teal*, No. 19-CV-24656, 2021 WL 5834245, at *27 (S.D. Fla. Dec. 8, 2021) (holding that the defendant former executive did not violate the CFAA by downloading company documents with the intent to compete with his employer later on because he downloaded them while still permitted access to those documents as an employee); *Foley Indus., Inc. v. Nelson*, No. 4:21-00309-CV-RK, 2021 WL 5614775, at *5 (W.D. Mo. Nov. 30, 2021) (holding that defendant employee did not violate the CFAA when she obtained emails, forwarded them to a personal account, and then altered and deleted certain information because she had authorization to access the IT system containing those emails).

Plaintiff's comparison of the domains in its account to cars in a garage is an apt illustration of why the FAC does not plead that Afternic exceeded its authorized access in light of *Van Buren*. *See* FAC ¶ 35-36. Plaintiff admitted that Afternic had access to its account (the garage): Plaintiff listed for sale multiple domains (cars) held in its account. *See id.* ¶ 19-25. Plaintiff does not allege that Afternic accessed its account without permission, but rather that, once in the account, Afternic had permission to list and sell certain domains, but not the Domain Name itself. *See id.* ¶ 34, 36-37. But under the CFAA, the prohibition against exceeding authorized access does not include misusing access that is otherwise authorized. *See Van Buren*, 141 S. Ct. at 1662. Afternic is not alleged to have "obtain[ed] information located in particular areas of the computer…that are off limits," *id.*, because Plaintiff gave it access to the account, i.e. the garage. The CFAA is concerned with unauthorized access, not unauthorized use. *See HP Tuners, LLC v. Cannata*, No.

318CV00527LRHWGC, 2022 WL 562625, at *14 (D. Nev. Feb. 24, 2022). Afternic's alleged

conduct after it accessed an account that it had authorization to access falls outside the CFAA.

Plaintiff cannot state a CFAA claim against Afternic under § 1030(a)(2) because Plaintiff

does not allege that Afternic exceeded its authorization when it accessed Plaintiff's account

containing the Domain Name.

### 3.   The FAC Does Not Plead A Cognizable Loss

Plaintiff also fails to state a CFAA claim because there are no well-pled factual allegations

of a cognizable loss. A civil claim under the CFAA requires, *inter alia*, a loss of at least $5,000

in a one-year period. *See* 18 U.S.C. § 1030(g) (defining civil liability by reference to first five

factors listed in § 1030(c)(4)(A)(i)). Damage and loss are terms of art: "damage" means "any

impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C.

§ 1030(e)(8). "Loss" means "any reasonable cost to any victim, including the cost of responding

to an offense, conducting a damage assessment, and restoring the data, program, system, or

information to its condition prior to the offense, and any revenue lost, cost incurred, or other

consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).

Plaintiff's allegations do not demonstrate that it suffered statutorily cognizable damages.

Plaintiff demands $3.8 million for "All damages" in its request for relief. *See* FAC at page 27.

Such a demand is insufficient: a "conclusory request for an award" in excess of $5,000 does not

satisfy the CFAA given its "narrow definition of loss." *Biesenbach v. Does 1-3*, No. 21-CV-

08091-DMR, 2022 WL 204358, at *7 (N.D. Cal. Jan. 24, 2022); *accord ACI Payments, Inc. v.

Conservice, LLC*, No. 121CV00084RJSCMR, 2022 WL 622214, at *12 (D. Utah Mar. 3, 2022)

(holding that a conclusory statement in support of allegations of $5 million in damages was

insufficient factual support to satisfy the CFAA's definition of loss).

Similarly, Plaintiff's generalized allegations about harm to its digital brand, search engine

optimization, carrier relationships, and credibility do not qualify as "damages" under the CFAA. *See* FAC ¶ 43-45, 66-69, and page 27.  Damage and loss under the CFAA "focus on the technological harms—such as the corruption of files—of the type unauthorized users cause to computer systems and data," and as such "create[] the right to recover damages and losses related to a computer or system, not damages that flow from the use of unlawfully obtained information." *Fraser v. Mint Mobile, LLC*, No. C 22-00138 WHA, 2022 WL 1240864, at *5 (N.D. Cal. Apr. 27, 2022) (dismissing CFAA claim where complaint alleged an interruption of service and theft of cryptocurrency after the unlawfully obtained information was used to hack an account).  *See also Saffron Rewards, Inc. v. Rossie*, No. 22-CV-02695-DMR, 2022 WL 2918907, at *8 (N.D. Cal. July 25, 2022) (dismissing CFAA claim where the complaint "does not articulate any technological harm or interruption to [plaintiff's] computer-related services, nor that [plaintiff] conducted any damages assessments or data restorations").  Plaintiff only pleads harms that "flow from" the alleged misconduct, and not the kind of technological damage and repair the CFAA addresses.

All of Plaintiff's theories of liability under the CFAA fail because Afternic had authorization to access Plaintiff's account.  Plaintiff's allegation that Afternic misused its access with respect to the Domain Name does not state a claim under the CFAA, nor do Plaintiff's allegations about harm fall within the CFAA's statutorily-defined categories of loss and damage. The Court should dismiss Plaintiff's CFAA claim.

### B.    Plaintiff Fails To State An ACPA Claim

Plaintiff cannot state an ACPA claim against Afternic because marketplaces do not "traffic in" domain names, there are no allegations that Afternic had a bad faith intent to profit from Plaintiff's mark, and there is no cause of action for contributory cybersquatting.  An ACPA claim requires the plaintiff to plead that "(1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the

10

plaintiff; and (3) the defendant acted 'with bad faith intent to profit from that mark.'" *Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 897 F. Supp. 2d 856, 863 (N.D. Cal. 2012), *aff'd* 737 F.3d 546 (9th Cir. 2013).

      1.     <u>Marketplaces Like Afternic Do Not "Traffic In" Domain Names</u>

Afternic and marketplaces like it do not "traffic in" domain names as that term is defined in the ACPA. *See Bird v. Parsons*, 289 F.3d 865, 881 (6th Cir. 2002) ("Afternic provides a virtual auction site, but the fact that its services might be used for trafficking in a domain name does not render it liable for trafficking."); *accord Ford Motor Co.*, 177 F. Supp. 2d at 645. The ACPA defines "traffics in" as "refers to transactions that include, but are not limited to, sales, purchases, loans, pledges, licenses, exchanges of currency, and any other transfer for consideration or receipt in exchange for consideration." 15 U.S.C. § 1125(d)(1)(E). Courts have interpreted that to "denote some level of ownership or control passing between the person transferring and the person receiving," meaning that the statute "contemplates a direct transfer or receipt of ownership interest in a domain name to or from the defendant." *Ford Motor Co.*, 177 F. Supp. 2d at 644-45. *See also Indiaweekly.com, LLC v. Nehaflix.com, Inc.*, No. 07-CV-0194 (TLM), 2011 WL 13228167, at *7 (D. Conn. Jan. 19, 2011) (granting summary judgment to defendant that "did not buy, sell, or exchange the rights to the domain name" and therefore did not "traffic in" in the domain name).

Marketplaces and auction sites do not fit into the ACPA's definition of "traffics in." *See Ford Motor Co.*, 177 F. Supp. 2d at 645. Courts have held specifically as to Afternic that it does not "use" domain names when "providing a site at which domain names can be sold." *Bird*, 127 F. Supp. 2d at 889. In *Ford Motor Co.*, the district court determined that the auctioneer's commercial activity did not fit within the ACPA's definition of "traffics in" because the auctioneer "does not transfer or receive for consideration the domain names that are sold over its website. Although it does provide a forum at which such transfers and receipts may take place, the property

interests associated with each domain name remain with the person 'transferring' and pass directly to the person 'receiving,' thus bypassing [the auctioneer] entirely." *Ford Motor Co.*, 177 F. Supp. 2d at 645.  As a result, the court held that the ACPA "does not cover [the auctioneer's] provision of ancillary services, which merely facilitate the statutorily targeted transfers and receipts." *Id.*

Afternic's marketplace does not place Afternic within the ACPA's definition of "traffics in."  Sellers and buyers use Afternic's marketplace to conduct transactions with each other: Afternic does not traffic in those domains.  *See Bird*, 289 F.3d at 881.  And Afternic's "provision of ancillary services, which merely facilitate the statutorily targeted transfers and receipts," *Ford Motor Co.*, 177 F. Supp. 2d at 645, such as removing domain names from one account and placing them in another, do not bring it within the ACPA's definitions.  The FAC reveals as much: Plaintiff admits that it received multiple notices about Afternic's terms when it listed other domain names for sale, *see* FAC ¶ 19, 21-25, and attached some of those terms to its original Complaint.  Users of Afternic's services "ACKNOWLEDGE AND AGREE THAT ALL DOMAIN NAMES, DOMAIN NAME LISTINGS, BIDS, OFFERS AND COUNTER-OFFERS, OF ANY AND ALL KINDS, ON THIS SITE ARE OWNED, POSTED AND TRANSFERRED BY MEMBERS; ARE NOT PROPERTY OF COMPANY…"  Dkt. No. 1 Ex. A at 2, "License To Use This Site."  As the courts in *Bird* and *Ford Motor Co.* held, Afternic and marketplaces like it do not "traffic in" domain names because those transactions are between sellers and buyers.

### 2.    Plaintiff Does Not Allege A Bad Faith Intent To Profit From A Mark

But even if Afternic's marketplace constituted trafficking in a domain name, the FAC lacks well-pled factual allegations that Afternic "'commandeered' the domain name for purpose of extorting [the plaintiff] or profiting from the value of [plaintiff's] trademark." *Miller v. Hurst*, No. 3:17-CV-00791, 2020 WL 5757907, at *10 (M.D. Tenn. Sept. 28, 2020).  The bad faith factors in the ACPA address whether "the defendant's use of the disputed domain name is legitimate—i.e.,

12

for some purpose other than simply to profit from the value of the trademark." *Ford Motor Co.*,
177 F. Supp. 2d at 642.  There are no well-pled allegations that Afternic sought to profit from the
value of Plaintiff's trademark.  To the contrary, Plaintiff alleges that Afternic was motivated by its
"twenty percent commission on every domain name it lists and transfers for sale," FAC ¶ 76, but
that kind of profit motive alone does not state an ACPA claim: there must be bad faith intent to
profit from the mark itself.  *See, e.g.*, *Lockheed Martin Corp. v. Network Sols., Inc.*, 985 F. Supp.
949, 960 (C.D. Cal. 1997), *aff'd*, 194 F.3d 980 (9th Cir. 1999) (holding that registrars do not "use"
trademarks merely because they "make[] a profit from the technical function of domain names");
*see also Acad. of Motion Picture Arts & Scis. v. GoDaddy.com, Inc.*, No. CV 10-03738 AB
(CWX), 2015 WL 5311085, at *35 (C.D. Cal. Sept. 10, 2015) ("*AMPAS*") (holding that the ACPA
requires "a bad faith intent to profit from specific trademarks" and not "a bad faith intent to profit
from trademarks generally").  An allegation that Afternic obtains the same profit from all sales is
the opposite of an allegation that Afternic had a bad faith intent to profit from the value of the
specific mark in the Domain Name.  Plaintiff cannot state an ACPA claim against Afternic by
virtue of its operation of a domain marketplace or merely because it takes a commission on sales.

### 3.    There Is No Cause Of Action For Contributory Cybersquatting

The FAC does not (and cannot) allege that Afternic registered, used, or trafficked in the
Domain Name, so there can be no ACPA claim against Afternic directly.  Because there is no
cause of action for contributory cybersquatting, the current registrant's use of the Domain Name
cannot create liability as to Afternic.

The first element of an ACPA claim is that "the defendant registered, trafficked in, or used
a domain name." *Petroliam Nasional Berhad*, 897 F. Supp. 2d at 863.  But there are no allegations
that Afternic was the registrant for the Domain Name, and the ACPA provides that a person is not
liable for "using" a domain name unless that person "is the domain name registrant or that

registrant's authorized licensee."  15 U.S.C. § 1125(d)(1)(D); *Ford Motor Co.*, 177 F. Supp. 2d at

644.  Nor is there liability against a marketplace based on "trafficking in" a domain name.  *See*

*Bird*, 289 F.3d at 881; *Ford Motor Co.*, 177 F. Supp. 2d at 645.  Without direct liability under the

ACPA, there can be no liability as to Afternic based on the current registrant's use of the Domain

Name, because there is no such thing as contributory cybersquatting.  *See Petroliam Nasional*

*Berhad*, 737 F.3d 546, 550 (9th Cir. 2013) ("We hold that the ACPA does not include a cause of

action for contributory cybersquatting…").  The Court should dismiss Plaintiff's ACPA claim.

> **C.**     **Plaintiff Cannot State A Chapter 93A Claim**

Plaintiff cannot state a Chapter 93A claim for alleged conduct is neither extreme nor

egregious, based on statements Afternic made after the sale of the Domain Name, or based on

intangible damages.

> **1.**     There Are No Allegations Of "Extreme Or Egregious" Conduct

Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or

practices in the conduct of any trade or commerce."  Mass. Gen. Laws Ann. ch. 93A, § 2(a).

Chapter 93A creates a private cause of action for "[a]ny person who engages in the conduct of any

trade or commerce and who suffers any loss of money or property, real or personal, as a result of

the use or employment by another person who engages in any trade or commerce of an unfair

method of competition or an unlawful or deceptive act or practice declared unlawful by section

two."  *Id.* § 11.  To state a claim under Section 11, a plaintiff must demonstrate that (1) the

defendant engaged in an unfair method of competition or committed an unfair deceptive act or

practice, (2) a loss of money or property, and (3) that defendant's unfair or deceptive method, act,

or practice cause the loss suffered.  *See Anoush Cab, Inc. v. Uber Techs., Inc.*, 8 F.4th 1, 16 (1st

Cir. 2021) (citing *Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.*, 17 N.E.3d 1066, 1074-1075

(Mass. 2014)).  Conduct is deceptive when it "has the capacity to mislead consumers, acting

14

reasonably under the circumstances, to act differently from the way they otherwise would have acted." *Bush v. WellPet, LLC*, 534 F. Supp. 3d 179, 185 (D. Mass. 2021). Conduct is unfair if it is "within the penumbra of a common law, statutory, or other established concept of unfairness," "immoral, unethical, oppressive, or unscrupulous," or "causes substantial injury to" consumers, competitors, or other business people. *Id.* at 186.

Plaintiff cannot state a Chapter 93A claim because Plaintiff has not alleged any type of "extreme or egregious" conduct targeted by Chapter 93A. *See Anoush Cab, Inc.*, 8 F.4th at 17-18 (describing Massachusetts' evolving description of what kind of conduct constitutes the "something more" required for a Chapter 93A claim). For example, "the mere breach of a contract, without more, does not amount to a" violation of Chapter 93A. *Madan v. Royal Indem. Co.*, 26 Mass. App. Ct. 756, 762, 532 N.E.2d 1214, 1217 (1989). Plaintiff's allegations amount to, at most, a dispute over the scope of its agreement with Afternic to list Plaintiff's domains for sale. But contract breaches amounting to Chapter 93A violations are in the nature of withholding admittedly due payments to exert undue bargaining power, *see Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc.*, 754 F.2d 10, 18 (1st Cir. 1985), or depriving an employee of earned commissions in bad faith, *see Trent Partners & Assocs., Inc. v. Digital Equip. Corp.*, 120 F. Supp. 2d 84, 107 (D. Mass. 1999), not good faith disputes. *See, e.g.*, *E. Bldg. Servs. Corp. v. Matzell, Richard & Watts, Inc.*, No. SUCV200302601C, 2008 WL 1868378, at *4 (Mass. Super. Jan. 23, 2008) (holding that defendant's retention of images based on its reasonable belief that they were not plaintiff's property was not an unfair or deceptive practice and "[a]t worst" contract breach).

Stripping away Plaintiff's legal conclusions, Plaintiff alleges that it listed some domain names for sale with Afternic, but not the Domain Name itself. *See* FAC ¶ 18-27, 32. Afternic claimed that Plaintiff had in fact listed the Domain Name at the same time as the other domains.

*See id.* ¶ 37, 39, 41-42, 104.  Afternic did not accede to Plaintiff's demands when Plaintiff insisted

that the sale was in error, and Plaintiff refused to accept the proceeds from the sale.  *See id.* ¶ 104.

That describes—at most—a good faith dispute, not "extreme or egregious" conduct by Afternic.

*See, e.g.*, *RFF Family P'ship, LP v. Link Dev., LLC*, 932 F. Supp. 2d 213, 226 (D. Mass. 2013)

("A good faith dispute as to whether money is owed, or performance of some kind is due, is not,

however, the stuff of which a Chapter 93A claim is made.").

Plaintiff cannot state a Chapter 93A claim against Afternic based on the sale of the Domain

Name.  And, as set forth below, Plaintiff cannot state a claim against Afternic for statements made

after the sale of the Domain Name or by a third party.

> 2.    There Are No Allegations That Afternic's Post-Sale Statements Harmed
>        Plaintiff

Plaintiff cannot state a Chapter 93A claim against Afternic because there is no causal nexus

between Afternic's alleged statements *after* the sale of the Domain Name and Plaintiff's alleged

damages from the sale itself.  Chapter 93A claims require that the "defendant's unfair or deceptive

method, act, or practice cause the loss suffered."  *Anoush Cab, Inc.*, 8 F.4th at 16.  Plaintiff makes

only two well-pled allegations about statements by Afternic: (1) the September 24, 2021 email

informing Plaintiff about the Domain Name Sale and (2) the September 27, 2021 email stating that

Plaintiff listed the Domain Name for sale.  *See* FAC ¶ 27, 39.  The September 24th email cannot

be deceptive: it is true that the Domain Name was sold.  The September 27th email, even if untrue,

is not deceptive as that term is defined under Chapter 93A because it lacked the capacity to mislead

Plaintiff "to act differently from the way they otherwise would have acted."  *Bush*, 534 F. Supp.

3d at 185.  And neither communication has any causal nexus to the harm alleged from the sale of

the Domain Name itself: whatever Afternic said or did not say in response to Plaintiff's complaints

about the sale, *see* FAC ¶ 104, had no effect on the sale of the Domain Name itself, which is the

alleged cause of Plaintiff's purported harm.  There is therefore no loss traceable to Afternic's comments about the circumstances of the sale of the Domain Name, and that conduct is therefore insufficient to state a Chapter 93A claim.

Nor can Plaintiff state a Chapter 93A claim against Afternic for statements made by GoDaddy.  On September 25, 2021 Plaintiff pleads that it "called GoDaddy and spoke with an individual named 'Brock'" and "Brock told [Plaintiff]" that Plaintiff had listed the Domain Name for sale.  FAC ¶ 37.  Plaintiff pleads that it spoke with another GoDaddy representative on October 4, 2021 and emailed with GoDaddy on October 21, 2021.  *Id.* ¶ 40-41.  None of those statements are attributed to Afternic and cannot form the basis of a claim against Afternic.

Plaintiff cannot state a Chapter 93A claim against Afternic based on statements with no causal nexus to the harm alleged or that were not made by Afternic.

### 3.    Plaintiff's Alleged Damages Are Intangible And Non-Cognizable

In addition to failing to allege conduct that violates Chapter 93A, Plaintiff fails to allege cognizable damages.  An essential element of a Chapter 93A claim is an allegation of "a loss of money or property."  *Fafard Real Est. & Dev. Corp. v. Metro-Bos. Broad., Inc.*, 345 F. Supp. 2d 147, 154 (D. Mass. 2004).  Such losses must be of "money or property, real or personal," with property being "the kind of property that is purchased or leased, not such intangibles as a right to a sense of security, to peace of mind, or to personal liberty."  *E. Bldg. Servs. Corp.*, No. SUCV200302601C, 2008 WL 1868378, at *4.  Plaintiff alleges that it lost search engine optimization advantages, credibility, and the benefit of certain relationships.  *See* FAC ¶ 44-45.  Plaintiff does not plead a loss of monetizable "[r]eputation or good will" with sufficient specificity to state a claim.  *Milford Power Ltd. P'ship by Milford Power Assocs. Inc. v. New England Power Co.*, 918 F. Supp. 471, 484 (D. Mass. 1996).  Plaintiff's claim must be dismissed.

### D.    Plaintiff Fails To State A Conversion Claim

Plaintiff cannot state a conversion claim against Afternic because Massachusetts does not recognize conversion claims for intangible property and there are no allegations that Afternic exercised the requisite dominion or control over the Domain Name.

#### 1.    Domain Names Are Intangible Property

Plaintiff cannot state a claim for conversion of the Domain Name because in Massachusetts "a conversion claim is viable only in cases involving tangible chattels." *Blake v. Professional Coin Grading Serv.*, 898 F. Supp. 2d 365, 386 (D. Mass. 2012).  Conversion requires that "(1) the defendant intentionally and wrongfully exercised control or dominion over the personal property; (2) the plaintiff had an ownership or possessory interest in the property at the time of the alleged conversion; (3) the plaintiff was damaged by the defendant's conduct; and (4) if the defendant legitimately acquired possession of the property under a good-faith claim of right, the plaintiff's demand for its return was refused." *Koch Acton, Inc. v. Koller*, No. CV 21-10374-FDS, 2022 WL 847408, at *3 (D. Mass. Mar. 22, 2022) (quoting *Evergreen Marine Corp. v. Six Consignments of Frozen Scallops*, 4 F.3d 90, 95 (1st Cir. 1993)).

Intangible assets are not the proper subject of Massachusetts conversion claims.  *See Sourcing Unlimited, Inc. v. Elektroteks, LLC*, No. 20-CV-11955-ADB, 2021 WL 2875713, at *12 (D. Mass. July 8, 2021) ("As a matter of law, [Plaintiff] cannot recover for the conversion of intangible property.").  The only exception is when intangible property "has merged with or been contained in a physical object which can be converted." *KPM Analytics N. Am. Corp. v. Blue Sun Sci., LLC*, No. 4:21-CV-10572-TSH, 2021 WL 6275214, at *9 (D. Mass. Aug. 23, 2021). Although computer files may be converted to the same extent as paper documents, *see, e.g.*, *Network Sys. Architects Corp. v. Dimitruk*, No. CIV.A. 06-4717-BLS2, 2007 WL 4442349, at *10 (Mass. Super. Dec. 6, 2007), the FAC contains no well-pled allegations that the Domain Name

merged with any physical device such that the intangible Domain Name could be the subject of a conversion claim. This Court need not credit Plaintiff's conclusory allegations that Afternic "wrongfully exercised" control, or that the Domain Name "resided with a tangible item, including without limitation, [Plaintiff's] computer storage device, on which its ideas and expressions were stored." FAC ¶ 99-100. This Court can take judicial notice that a domain name is an "alphanumeric designation which is registered with or assigned by any domain name registrar, domain name registry, or other domain name registration authority as part of an electronic address on the Internet." 15 U.S.C. § 1127. Plaintiff's description of the content of the website that resolved from the Domain Name, *see* FAC ¶ 100, is not the Domain Name itself: just as the original Complaint did not contain any inference that the Domain Name was "downloaded onto a flash drive or some sort of physical disk," *Sentient Jet, LLC v. Apollo Jets, LLC*, No. 13-CV-10081, 2014 WL 1004112, at *11 (D. Mass. Mar. 17, 2014), and so too does the FAC fail to include any such allegation or inference in light of the nature of domain names. *See also Struzziero v. Lifetouch Nat'l Sch. Studios, Inc.*, 677 F. Supp. 2d 350, 354 (D. Mass. 2009) (granting summary judgment on conversion claim because in Massachusetts "conversion claims do not extend to intangible property"); *Discover Realty Corp. v. David*, 2003 WL 22387138, at *3, 2003 Mass. App. Div. 172 (Dist. Ct. 2003) (conversion claim does not extend to intangible personal property that is not merged with or evidenced by a document). Without any well-pled allegations that the intangible Domain Name merged into tangible property capable of conversion, Plaintiff cannot state a claim.

## 2.    The FAC Does Not Allege Afternic's "Dominion Or Control"

But even if the Domain Name were tangible, Plaintiff cannot state a claim because there are no well-pled factual allegations that Afternic "intentionally and wrongfully exercised control or dominion over" the Domain Name. *Koch Acton, Inc.*, No. CV 21-10374-FDS, 2022 WL 847408, at *3. Just as marketplaces like Afternic do not "traffic in" domain names under the

19

ACPA, *see Ford Motor Co.*, 177 F. Supp. 2d at 645; *Bird*, 127 F. Supp. 2d at 889, so too for purposes of conversion does Afternic lack the requisite control over the Domain Name. There are no allegations that Afternic became the registrant of the Domain Name, only that an "Indonesian gambling entity" purchased the Domain Name. FAC ¶ 36. Afternic's terms of service provide that all users (including Plaintiff) acknowledge and agree that "ALL DOMAIN NAMES…ON THIS SITE ARE OWNED, POSTED AND TRANSFERRED BY MEMBERS; ARE NOT PROPERTY OF COMPANY…" Dkt. No. 1 Ex. A at 2, "License To Use This Site." The FAC does not contain well-pled factual allegations of the requisite dominion or control required for conversion, and the documents of record in this litigation undermine any such claim. This Court should dismiss Plaintiff's conversion claim.

## V.    CONCLUSION

Plaintiff cannot state any claims against Afternic. The CFAA does not impose liability for alleged misuse of authorized access. The ACPA does not impose liability on marketplaces and there is no cause of action for contributory cybersquatting. Chapter 93A requires extreme or egregious conduct, and there is no conversion claim in Massachusetts for intangible property. Afternic respectfully requests that this Court dismiss the FAC.

Dated:    October 7, 2022            COZEN O'CONNOR

                                     By:  *s/Jonathan Toren*

                                     Jonathan Toren (BBO# 674779)
                                     Jeffrey M. Monhait (*to be admitted pro hac vice*)
                                     Haryle Kaldis (*to be admitted pro hac vice*)
                                     999 Third Avenue, Suite 1900
                                     Seattle, Washington 98104
                                     Telephone:  (206) 340-1000
                                     Email:  jtoren@cozen.com
                                             jmonhait@cozen.com
                                             hkaldis@cozen.com

                                     *Attorneys for Defendant*
                                     AFTERNIC SERVICES, LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 7, 2022, I electronically filed the foregoing documents with the Clerk of the Court by using the CM/ECF system and that foregoing document is being served on all counsel of record identified below via transmission of Notice of Electronic Filing generated by CM/ECF:

Alexis Smith Hamdan, Esq.
Gilbert J. Schipani, Esq.
Tempus Fugit Law LLC
185 Devonshire Street, Suite 201
Boston, MA 02110
Tel:
Email: alexis@tflawllc.com
        gil@tflawllc.com

*Attorneys for Plaintiff Premier Shield*
*Insurance, LLC*

 *s/Jonathan Toren*
JONATHAN TOREN

21